**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT M. WILLIMON,

                Plaintiff,

vs.                                   Case No. 3:08-cv-1235-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I. Status

      Robert M. Willimon ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits and supplemental security income. His alleged inability to work is based on the physical impairment of lung disease resulting in difficulty breathing and the mental impairment of depression. Transcript of Administrative Proceedings (Doc. No. 15; "Tr.") at 559; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 11; "Pl.'s Mem.") at 3. On February 25, 2004, Plaintiff filed a claim for disability insurance benefits and supplemental security income, alleging an onset date of May 19, 2003. Tr. at 59-61; Pl.'s Mem. at 1. On August 22, 2006, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 554-77. On

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 6), and the Order of Reference was entered on March 11, 2009 (Doc. No. 8).

September 27, 2006, the ALJ issued a Decision finding Plaintiff not disabled.  Tr. at 13-24.

On October 30, 2008, the Appeals Council denied Plaintiff's request for review.  Tr. at 5-7.

On December 23, 2008, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's

final decision.  Plaintiff has exhausted the available administrative remedies, and the case

is properly before the Court.

Plaintiff raises two issues:  (1) whether the ALJ "failed to adequately address the

impact [Plaintiff]'s mental impairments had on his residual functional capacity [("RFC")] and

ability to perform work existing in significant numbers in the national economy"; and (2)

whether the ALJ's "review of [Plaintiff]'s testimony and assessment of his credibility is legally

deficient and not supported by substantial evidence."  Pl.'s Mem. at 1.  After a thorough

review of the entire record and consideration of the parties' respective memoranda, the

undersigned finds that the RFC assessment in the ALJ's hypothetical to the VE adequately

incorporated the effects of all of Plaintiff's mental impairments, and the ALJ's credibility

determination is supported by substantial evidence.  Accordingly, the Commissioner's final

decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step

sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[2]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ followed the five-step sequential inquiry.  Tr. at 15-24.  At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since May 19, 2003 (the alleged onset date).  Tr. at 15.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "drug and alcohol abuse (in remission); disorders of the lungs; affective disorders."  Tr. at 15.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 17.

The ALJ determined Plaintiff has the RFC to perform light work with a need to avoid the following:  ladders and unprotected heights; operating heavy moving machinery; concentrated exposure to fumes and gases; and unusual stress.  Tr. at 18.  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a carpenter.  Tr. at 21. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC.  Tr. at 22.  Based on the testimony of the VE, the ALJ identified the following jobs as examples of work Plaintiff can perform: ten percent of statewide jobs as an assembler; ten to fifteen percent of statewide jobs as a telephone quotation clerk; ten to fifteen percent of statewide jobs as a charge account clerk; and eighty to ninety percent of statewide jobs as

an office helper. Tr. at 23. The ALJ concluded that Plaintiff has not been under a disability from May 19, 2003 (the alleged onset date) through the date of the decision. Tr. at 24.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff contends that the ALJ failed to address Plaintiff's mental impairments adequately, and that the ALJ's credibility determination was erroneous.  Pl.'s Mem. at 1.  For ease of discussion, and to present the issues in the proper context, the undersigned first addresses the ALJ's credibility determination, and then addresses the manner in which the ALJ considered Plaintiff's alleged mental impairments.

### A.  Credibility Determination

Plaintiff contends the ALJ's assessment of Plaintiff's credibility was legally deficient and unsupported by substantial evidence.  Pl.'s Mem. at 1, 18-25.  The ALJ "concluded that [Plaintiff]'s testimony was not credible as he offered no reasonable explanation as to why he would be unable to perform the types of activities described in the residual functional capacity" assessment.  Tr. at 20-21.  Plaintiff argues that the "ALJ's evaluation of Plaintiff's testimony and assessment of Plaintiff's credibility is inadequate, fails to provide a 'complete picture' of [Plaintiff]'s testimony, and is inconsistent [with] and/or clearly misrepresent[s] the actual evidence of record."  Pl.'s Mem. at 20.

"In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If it is determined that a claimant has a medical condition that could reasonably give rise to the subjective

symptoms alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When evaluating a claimant's subjective symptoms, the relevant factors include the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c), 416.929(c); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

Although the ALJ did not specifically refer to these factors, the ALJ did in fact consider them. The ALJ articulated no less than seven reasons for his finding that Plaintiff was not credible. Tr. at 20-21. The ALJ first explained that Plaintiff reported earning money in 2004 from babysitting his granddaughter. Tr. at 20. Plaintiff argues that "[t]his report by [Plaintiff]

is found in a medical treatment note and there is no indication as to how often Mr. Willimon babysat, what the babysitting required from an exertional and nonexertional standpoint and clearly does not support a determination that [Plaintiff] can work [eight] hours a day, [five] days a week." Pl.'s Mem. at 20. However, as the ALJ implicitly recognized, the fact Plaintiff was able to babysit suggests he may not be as limited as he claims. Tr. at 20. Together with the other reasons articulated by the ALJ, this constitutes substantial evidence for discrediting Plaintiff's testimony.

Secondly, the ALJ observed that Plaintiff reported that he had a tattoo kit, which he used to practice on himself and his friends, although Plaintiff was not licensed to apply tattoos. Tr. at 20. Although Plaintiff argues this is not relevant, Pl.'s Mem. at 20, the fact Plaintiff was able to engage in tattooing suggests he is able to do more than he claims, as the ALJ implicitly recognized. Tr. at 20. Together with the other reasons articulated by the ALJ, this constitutes substantial evidence for discrediting Plaintiff's testimony.

Third, the ALJ observed that Plaintiff was receiving unemployment income during the same time period he was alleging disability, and "hence reported to the State of Florida that he was capable and actively looking for work while simultaneously reporting that he was physically and mentally unable to perform any work." Tr. at 20. Plaintiff argues that the ALJ's analysis in this regard is based on an incomplete understanding of Florida's unemployment benefits statute. Pl.'s Mem. at 21. Plaintiff acknowledges that section 443.091(1)(c) of the Florida Statutes states that an unemployed individual is eligible for unemployment compensation benefits only if the Agency for Workforce Innovation finds, among other things, that the individual is "able to work and is available for work." Fla. Stat.

§ 443.091(1)(c). Nevertheless, Plaintiff argues that unemployment benefits may still be paid even though the individual is working part-time. Pl.'s Mem. at 21 (citing Fla. Stat. § 443.111(4)(b)). Thus, Plaintiff contends that the provision that an individual be "able to work" under the Florida unemployment compensation statute does not equate to the Social Security Administration's definition of "not disabled." Pl.'s Mem. at 21.

Upon review of the ALJ's Decision, it does not appear the ALJ was asserting that the phrase "able to work" under the Florida unemployment compensation statute means the same thing as "not disabled" under the Social Security Act. See Tr. at 20. The ALJ did not state that Plaintiff's attempts to seek employment or collect unemployment benefits constituted an admission that he is not disabled or otherwise estop him from claiming disability. Tr. at 20. Rather, it appears the ALJ was only pointing out the inconsistency between collecting unemployment benefits while claiming to be as limited as Plaintiff alleges. Tr. at 20. When it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, Plaintiff so reported; now that Plaintiff is seeking disability benefits, he is reporting that he is unable to work. These positions are inconsistent. Moreover, the ALJ noted that on November 22, 2004, Plaintiff reported that he had been looking for work, but no one would hire him, Tr. at 20 (citing Tr. at 139), and on September 1, 2005, Plaintiff reported that he could not find a job. Tr. at 20 (citing Tr. at 328); see also Tr. at 567. Attempting to find employment is inconsistent with the extremely limited functioning Plaintiff claims. Such inconsistency constitutes substantial evidence to discredit Plaintiff's subjective testimony.

Fourth, the ALJ stated that Plaintiff is more active than his testimony suggests: on June 9, 2004, Plaintiff reported that he was attending school to complete his General Equivalency Diploma, he drove periodically, watered plants, played with his dog, and played his guitar. Tr. at 21 (referring to Tr. at 184). The ALJ noted that, after his lung surgery in 2004, Plaintiff reported being able to shop, drive, prepare his own meals, attend to his personal needs, watch television, make the bed, wash dishes, and feed his dog. Tr. at 21. Plaintiff argues that he engaged in these activities prior to a motorcycle accident on April 1, 2006, and now he is more limited. Pl.'s Mem. at 22.[3] Plaintiff also asserts that the reports from which this information was taken contain evidence supporting a finding of disability that the ALJ ignored. Id. (citing Tr. at 145, 139) (stating that Plaintiff can walk only two blocks before needing to stop and catch his breath). Plaintiff contends that the ability to drive, watch television, or water plants "in no way equates to an ability to sustain work activity [eight] hours a day, [five] days a week." Id.

Although everyday activities of short duration do not disqualify a claimant from disability, Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), substantial evidence supports the ALJ's conclusion here that Plaintiff's activities are inconsistent with the extreme limitations he claims. Plaintiff's activities may have been more limited since his motorcycle accident; however, the discharge summary related to the accident does not suggest that the injuries or limitations that Plaintiff suffered as a result of the accident are permanent. See Tr. at 491 (advising Plaintiff to follow up in two weeks and not engage in heavy lifting, pushing, or pulling). Moreover, even before the April 1, 2006 motorcycle accident, Plaintiff

_____

[3] Plaintiff was drinking whiskey the day of the motorcycle accident. Tr. at 561, 565.

was asserting that he suffers from extreme limitations in his ability to function. <u>See</u> Tr. at 59 (alleging an onset date of May 19, 2003). Therefore, for purposes of evaluating his credibility, Plaintiff's activities during the entire period of time for which he is alleging disability are relevant to the extent they make his testimony more or less believable. Plaintiff testified that, currently, he goes to the grocery store at least once a week and is able to carry light packages; he is able to go to church once a week; he is able to dress himself; and he is able to shower and shave himself. Tr. at 563-65. It would appear that Plaintiff's activities have not been consistent with the level of extreme limitation he has claimed, which undermines his credibility. Together with the other reasons articulated by the ALJ, this constitutes substantial evidence for discrediting Plaintiff's testimony.

Fifth, the ALJ found that, overall, Plaintiff "presented himself as more limited than he actually is in an attempt to achieve secondary gain." Tr. at 21. The ALJ explained that "[t]here are many reasons, other than actual limitation, for an individual to claim disability, including financial gain, avoidance of responsibility, and avoidance of work," and that some of these factors apply to Plaintiff. Tr. at 21. According to the ALJ, Plaintiff has little incentive to work because his friends give him money to pay bills, he receives food stamps, he lives with friends or his sister, and he has an unidentified source of income for purchasing drugs, alcohol, and cigarettes. Tr. at 21. Plaintiff argues that the ALJ erred by not inquiring as to the source of these funds, and that the ALJ did not question Plaintiff's testimony that he no longer smokes or drinks alcohol. Pl.'s Mem. at 23. In addition, Plaintiff asserts the ALJ ignored that Plaintiff was living in a homeless shelter at the time of the hearing. <u>Id.</u> According to Plaintiff, "the ALJ, through his reasoning, would have us believe that [Plaintiff]

is 'living the high life' because he was homeless with no income but was fortunate enough to have friends or family to provide him a place to live and state assistance in order to eat!" Id. Plaintiff argues, without citation, that the ALJ's finding that Plaintiff has little incentive to work "is clearly illogical and improper." Id.[4] Other courts have considered a claimant's motivation to achieve secondary gain as a relevant factor in making a credibility determination. See Merrillat v. Comm'r of Soc. Sec. Admin., 350 F. App'x 163, 166 (9th Cir. 2009) (unpublished); Leech v. Barnhart, 177 F. App'x 225, 228 (3d Cir. 2006) (unpublished). The ALJ's observation that Plaintiff was motivated to present himself as more limited by a desire to achieve secondary gain was a proper consideration, and that observation is supported by substantial evidence.

Sixth, the ALJ observed that, although Plaintiff testified that his medications do not help him, "this testimony is not corroborated by documentation of reports to treating sources." Tr. at 21. The ALJ further explained that Plaintiff's "alleged continued use of ineffective medication is inconsistent with his claim that he does not have enough money to pay the $5.00 fee for monthly group therapy." Tr. at 21. The inconsistencies of Plaintiff's testimony in this regard undercut his credibility.

Seventh, and perhaps most persuasively, the ALJ observed that on January 17, 2006, Bonnie Brock, C.V.E., a vocational consultant, issued a Vocational Evaluation Report. Tr. at 21 (referring to Tr. at 481-87). In the report, Ms. Brock stated that Plaintiff's "prognosis for employment is poor due to the nature of his medical problems," and he is "most likely a

---

[4] Plaintiff also argues that the ALJ's statements that Plaintiff has a girlfriend are factually incorrect. Pl.'s Mem. at 23. Because the ALJ's credibility determination was not directly tied to whether Plaintiff does or does not have a girlfriend, it is not necessary to address this argument.

candidate for social security benefits." Tr. at 486. Nonetheless, in an addendum to the report, Ms. Brock opined that, "[i]f [Plaintiff] is unable to obtain social security benefits then he may want to consider obtaining his chauffeurs license and look for a job driving such as a courier, shuttle bus, airport taxi, floral delivery or chauffeur." Tr. at 487. However, Ms. Brock noted that Plaintiff "could not handle the long hours involved in being a taxi driver." Tr. at 487. The fact that Ms. Brock suggested that Plaintiff could work as a driver, as long as he was not required to work the long hours necessary to drive a taxi, supports the ALJ's view that Plaintiff is not as limited as he claims.

The ALJ articulated a number of reasons for discrediting Plaintiff's testimony. These reasons, taken together, are adequate reasons on which to base a finding that Plaintiff's testimony was not credible. Furthermore, upon a thorough review of the entire record, the undersigned finds that the ALJ's reasons are supported by substantial evidence.

### B. Mental Impairments

Plaintiff argues the ALJ's RFC assessment was deficient because it failed to include all of the limitations resulting from Plaintiff's mental impairments. Pl.'s Mem. at 10, 13. Specifically, Plaintiff asserts that the ALJ's finding in the Decision that Plaintiff suffers from "'moderate difficulties in concentration, persistence, or pace that would not preclude performance of unskilled work'" was not taken into account when the ALJ assessed Plaintiff's RFC. Id. at 13 (quoting Tr. at 17). The Commissioner argues that any error in the RFC assessment of the written Decision is rendered harmless by the RFC that was presented to the VE during the August 22, 2006 hearing. Memorandum in Support of the Commissioner's Decision ("Deft.'s Mem.") at 6. Plaintiff contends that the ALJ's hypothetical failed to include

-12-

Plaintiff's moderate difficulties in concentration, persistence, or pace; and the hypothetical "failed to comprehensively account for all of the limitations on [Plaintiff]'s ability to work as found by the ALJ." Pl.'s Mem. at 10-11.

### 1. Applicable Law

In evaluating a claimant's mental condition, the Regulations direct the use of the psychiatric review technique. See 20 C.F.R. §§ 404.1520a and 416.920a. The psychiatric review technique is embodied by the psychiatric review technique form ("PRTF") and is further described in the preface of section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listings. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. Next, the degree of functional limitation relating to such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). In determining the degree of functional limitation resulting from a mental impairment, four "broad functional areas" in "paragraph B" of the listings are rated: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the criteria under paragraph B do not establish that the claimant is disabled, depending on the type of mental

disorder, the criteria under "paragraph C" are considered. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00.[5]

Next, if paragraph C does not establish that the claimant is disabled, the severity of the mental impairment is determined based on the degree of limitations in the four broad functional areas. See 20 C.F.R. §§ 404.1520a(d) and 416.920a(d); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. If the claimant is determined to have a severe mental impairment that does not meet or medically equal any of the listing of impairments, then the claimant's RFC is assessed. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00. The ratings of the claimant's limitations in the four broad functional areas pursuant to the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the [listings]." Id.

When making the more detailed assessment and itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process,

_____

⁵ For affective disorders, including depression, the paragraph C criteria are as follows: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication or continued need for such an arrangement." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(C).

"[n]onexertional capacity[6] must be expressed in terms of work-related functions." Id. at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c) and 416.945(c); Pabon v. Barnhart, 273 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).

### 2. Proceedings Before the ALJ and Hypothetical to the VE

In his Decision, the ALJ specifically addressed Plaintiff's mental condition as required by the psychiatric review technique. Tr. at 17. The ALJ considered the evidence in the record concerning Plaintiff's alleged mental impairments, including the opinions of state agency physicians. Tr. at 16-21. As the ALJ recognized, Tr. at 16-21, Plaintiff has been treated for depression and has at times suffered from suicidal ideation; on July 5, 2004, Plaintiff was taken to the emergency room with complaints of suicidal ideation. Tr. at 224-30, 327-42, 374-77. The ALJ noted that on July 14, 2004, Plaintiff was diagnosed with major depressive disorder. Tr. at 16 (referring to Tr. at 328). The ALJ observed that on November 23, 2004, Sarah Howard, MSW, found Plaintiff has difficulty with focusing, recent memory,

_____

[6] "Nonexertional capacity measures all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions." SSR 96-8p, 1996 WL 374184, at *6.

and hand tremors, and Ms. Howard opined that Plaintiff is unable to work due to physical limitations, symptoms of depression, anxiety, concentration difficulties, lethargy, and social isolation. Tr. at 18 (referring to Tr. at 311-12). The ALJ pointed out that despite these difficulties, Ms. Howard indicated Plaintiff was "competent to manage independently [his] own benefits." Tr. at 18 (referring to Tr. at 312). The ALJ gave little weight to Ms. Howard's opinion because of this inconsistency, because there are no treatment notes to corroborate her opinion, and because her opinion is contradicted by the other evidence in the medical record. Tr. at 19. A review of the record reveals that there are no treatment notes indicating that Ms. Howard provided long-term treatment to Plaintiff.

The ALJ also obtained the opinions of nonexamining, state agency physicians. Tr. at 17. One nonexamining, state agency physician opined that Plaintiff has mild restrictions in activities of daily living, no difficulties in maintaining social functioning, mild deficiencies in concentration, persistence, or pace, and no episodes of decompensation of extended duration. Tr. at 17 (referring to Tr. at 288-301). A second nonexamining, state agency physician opined that Plaintiff has mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild deficiencies in concentration, persistence, or pace, and no episodes of decompensation of extended duration. Tr. at 17 (referring to Tr. at 313-26).

After considering this evidence, the ALJ found that "[t]he record does not establish limitations beyond those identified by the State agency medical consultants, as there is no longitudinal mental health treatment record as of [Plaintiff]'s alleged disability onset date and through the date of the hearing." Tr. at 17. Nonetheless, the ALJ resolved doubts in Plaintiff's favor and rated Plaintiff's four broad functional areas as follows: Plaintiff has "mild

restrictions in activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace that would not preclude performance of unskilled work; [and] no episodes of decompensation . . . ." Tr. at 17. A thorough review of the record reveals that this finding is supported by substantial evidence.

At step two of the five-step sequential inquiry, the ALJ found that Plaintiff's affective disorder is a severe impairment, but at step three the ALJ determined that Plaintiff's affective disorder does not meet or medically equal the listing of impairments. Tr. at 15, 17. The ALJ then assessed Plaintiff's RFC and found only that Plaintiff needs to avoid "unusual stress." Tr. at 18.

During the hearing, the ALJ consulted a VE to determine whether Plaintiff can perform any past relevant work (step four), and whether there is work in substantial numbers in the national economy that Plaintiff can perform (step five). Tr. at 569-77.[7] When an ALJ relies on the testimony of a VE, "the key inquiry shifts [from the RFC assessment in the ALJ's written decision] to the adequacy of the RFC description contained in the hypothetical posed to the VE." Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. April 17, 2008) (unpublished). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Phillips, 357 F.3d at 1240 n.7 (internal quotation and citation omitted). Nevertheless, an ALJ is not required to include findings in the hypothetical that are properly rejected as unsupported by the evidence. Crawford, 363 F.3d at 1161. The assessment of

---

[7] While the Commissioner does not directly defend the RFC assessment in the ALJ's written Decision, the Commissioner argues that, "[t]o the extent that the ALJ erred in failing to limit Plaintiff to unskilled work when he assessed Plaintiff's RFC, this was at most harmless error because the hypothetical [to the VE] adequately accounted for this limitation." Deft.'s Mem. at 6.

functional limitations resulting from mental impairments "is a complex and highly individualized process." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1). "[T]he ALJ has some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (unpublished).

Here, the ALJ asked the VE whether there were any light work, "entry-level jobs" that could be performed by a claimant of Plaintiff's age and experience who needs to avoid unusual stress and has "no skills or semi-skills," as well as other limitations:

> Q        Okay.  Assume I find the claimant is 47 years old, has a 10th grade education.  Assume further that I, that I find that he could perform light work and is further limited by the following exertional and nonexertional impairments.  He needs to avoid ladders and unprotected heights.  He needs to avoid the operation of heavy moving machinery.  He needs to avoid concentrated dust, fumes, or gasses.  He needs to avoid unusual stress.  Can the claimant perform any of his past work?
>
> A        No, Your Honor.
>
> Q        How about at entry level.  Let's go down and assume that the claimant has no skills, or semi-skills at all and is the age I have previously described, has the work experience and education previously stated.  Assume further that he could perform light work and has the exertional and nonexertional limitations I originally described.  Are there any entry-level jobs the claimant could perform?  And, if so, could you give us the title of the job, the number of jobs in the region, which I define as the State of Florida, and some nonincluded sedentary level jobs, if you'd describe those as well.

Tr. at 571-72.  In response to this hypothetical, the VE opined that there are a certain number of the following jobs, which the hypothetical claimant could perform:  "assembler production"; "telephone quotation clerk"; "charge account clerk"; and "office helper."  Tr. at 572-73.  The VE clarified that "[t]his is unskilled work."  Tr. at 573.

Counsel for Plaintiff then questioned the VE. Tr. at 574-76. Plaintiff's counsel posed

a hypothetical that included additional limitations:

Q           If claimant had some additional mental limitations as follows: moderate impairment in concentration, persistence, and pace; moderate impairment in the ability to respond to changes, routine changes in a work setting; and moderate impairment in the ability to deal with co-workers, supervisors and the public. All three moderate, could the claimant perform any of the jobs that you've identified?

A           Could you define moderate for me?

Q           That's a $64 question. Moderate last time I think I tried to quantify it was somewhere between, somewhere between, let's say 11 and 25 percent, if mild is 0 to 10 percent, moderate is 11 to 25 percent and marked is anything over 25 percent. I think that's kind of conservative.

A           And, in your hypothetical again, if the person was moderate decrease in concentration?

Q           Persistence and pace as a result of depression. A moderate problem responding to routine changes in a work setting and a moderate problem dealing with co-workers, supervisors and the public.

A           The nature of unskilled work is going to involve a high level of supervision. That is a very routine, repetitive type of, type of work, so if he has trouble interacting with, in particular supervisors, that may present a significant obstacle. If he has a, a difficulty adjusting to routine changes that may also present a barrier, as well as concentration, this is [ ] typically unskilled work, is very routine in nature.

Q           So a moderate impairment in any one of those three areas of function would prohibit unskilled work?

A           It would, it would, it would certainly impact that unskilled work.

Q           Impact to the point that it was not able to be performed?

A           I would say that it would erode, it would erode, erode the numbers that I gave you previously, depending upon the, the nature of the job that was being performed. Every employer situation is a little bit different. Some will be much more tolerant to unskilled workers than others, because they're readily replaceable. So, I, I would suspect that someone with those, with a moderate limitation, given a ready supply of labor would be at a significant disadvantage for continued employment.

Q           What about is there any cumulative effect of having moderate impairments in three different areas?

| A | That, that would probably erode it even further. |
|---|---|
| Q | So, and then I guess it's safe to assume that if there were a marked impairment in any one of those areas it would preclude employment? |
| A | In the jobs that I have given you, yes. |

Tr. at 574-76.

The ALJ then modified the hypothetical posed by Plaintiff's counsel:

| Q | If the definition of moderate only indicated some difficulties, but would not prevent satisfactory performance in the areas that are delineated, would it affect any of the jobs that you have, that you have described? |
|---|---|
| A | No, your honor. |
| ATTY: | Okay. So it comes back to the definition of moderate, as it always does. |
| ALJ: | I understand. |

Tr. at 576.

In his Decision, the ALJ addressed the additional limitations in the hypothetical posed by Plaintiff's counsel. Tr. at 23-24. The ALJ concluded that Plaintiff's counsel "asked the [VE] if the hypothetical individual would remain capable of performing the above jobs if the hypothetical individual had additional limitations which are not included in the assessed [RFC]. As the [ALJ] finds that these additional limitations are not supported by either the record or credible testimony, the [ALJ] further finds that the effects of these additional limitations are not relevant to the issue of disability in this case." Tr. at 23-24. After making this finding, the ALJ used the VE's testimony to determine that jobs exist in significant numbers in the national economy which Plaintiff can perform. Tr. at 24.

### 3. Analysis

In rating Plaintiff's limitations in the four broad functional areas, the ALJ found that Plaintiff has "moderate difficulties in concentration, persistence, or pace[8] that would not preclude performance of unskilled work." Tr. at 17. "Unskilled work" is a term of art that is defined by the Regulations. Fisher, 181 F. App'x at 364. It is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568 and 416.968. Thus, the ALJ found that Plaintiff has moderate difficulties in sustaining focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks; however, the ALJ qualified this with the finding that Plaintiff is able to perform simple duties that require little or no judgment and can be learned on the job in a short period of time.[9]

The ALJ incorporated his findings into the RFC posed in the hypothetical to the VE: the ALJ asked the VE to assume that the claimant needs to avoid unusual stress, has no skills or semi-skills, and requires an entry-level position. Tr. at 571-72. With respect to the additional limitations posed by Plaintiff's counsel, the ALJ specifically rejected them as unsupported by the record or credible testimony. Tr. at 23-24. Indeed, the ALJ explicitly "concluded that [Plaintiff]'s testimony was not credible as he offered no reasonable explanation as to why he would be unable to perform the types of activities described in the

---

[8] "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C)(3)

[9] As this is a determination as to what Plaintiff is able to do despite his limitations, it was within the province of the ALJ. See 20 C.F.R. §§ 404.1545(a) and 419.945(a); see also Fisher, 181 F. App'x at 365.

[RFC]." Tr. at 20.[10]  Reviewing from a longitudinal perspective the treatment records related to Plaintiff's depression, substantial evidence supports the ALJ's view that Plaintiff's depression is not so severe that he is incapable of performing even simple duties that require little or no judgment and can be learned in a short period of time.  Tr. at 327-43.  In fact, on August 3, 2004, approximately one month after Plaintiff was hospitalized for suicidal ideation, Plaintiff's mood was euthymic, and his insight/judgment was fair.  Tr. at 334.  The ALJ was not required to include findings in the hypothetical that he properly rejected as unsupported by the evidence.  See Crawford, 363 F.3d at 1161.  The ALJ crafted a hypothetical supported by substantial evidence that communicated to the VE what Plaintiff could and could not do, as was within the ALJ's discretion.  See Fisher, 181 F. App'x at 364.

The hypothetical here is similar to others that courts have accepted as sufficient to incorporate the finding that a claimant has moderate difficulties in concentration, persistence, or pace.  For example, in Fisher, the ALJ determined that the claimant's adjustment disorder and borderline intellectual functioning mildly restricted his activities of daily living, caused mild difficulty with social functioning, and resulted in moderate difficulties in maintaining concentration, persistence, and pace.  Fisher, 181 F. App'x at 362.[11]  The ALJ's hypothetical asked the VE to assume that the claimant was capable of only unskilled work and could not perform complex tasks.  Id. at 364.  The United States Court of Appeals for the Fourth Circuit

---

[10]  It has already been determined that the ALJ's credibility determination is supported by substantial evidence.  See supra pp. 5-12.

[11]  As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in Fisher.

found the ALJ committed no error because the hypothetical incorporated an RFC assessment that was supported by substantial evidence. Id. at 365.

Similarly, in Stout v. Astrue, No. 3:07-cv-987-J-TEM, 2009 WL 890388 (M.D. Fla. March 31, 2009), the ALJ found the claimant to have an affective disorder (anxiety/depression) that resulted in no restriction of activities of daily living, no difficulties in maintaining social functioning, and "mild to moderate difficulties in maintaining concentration, persistence, or pace." Stout, 2009 WL 890388, at *3.[12] The ALJ's hypothetical asked the VE to assume that the claimant was required to avoid work that involved exposure to unusual stress and further modified the hypothetical to assume entry level work in which the claimant had no skills or semi-skills. Id. at *4. After distinguishing other cases, the Stout court concluded that the claimant's mental limitations were "adequately accounted for in the functional limitation requiring Plaintiff 'avoid work that involves exposure to unusual stress.'" Id. at *5-6 (quoting ALJ); see also Bordelon v. Astrue, 281 F. App'x 418, 423 (5th Cir. 2008) (unpublished) (concluding that the ALJ's finding that the claimant had moderate limitations in concentration, persistence, and pace was sufficiently incorporated into a hypothetical that restricted the claimant to only rare public interaction, low stress, and "simple, one-, two-step-type instructions"); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (concluding that the finding claimant "often" suffered deficiencies in concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner was sufficiently incorporated into a

---

[12] As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in Stout.

hypothetical that limited the claimant to jobs that are routine, low-stress, and do not involve interpersonal confrontations or high quotas).

The hypothetical here was more thorough than others that courts have rejected as insufficiently incorporating the finding of moderate difficulties in concentration, persistence, or pace. In <u>Williams v. Astrue</u>, No. 3:07-cv-783-J-HTS (M.D. Fla. June 20, 2008) (unpublished), the ALJ found that the claimant had an affective disorder that resulted in mild restrictions of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. <u>Williams</u>, No. 3:07-cv-783-J-HTS at 9.[13] The hypothetical to the VE stated only that the claimant needed to avoid unusual stress. <u>Id.</u> The court remanded, finding that it was "not clear this limitation was sufficient to encompass the impairments recognized by the ALJ." <u>Id.</u> (citations omitted). Here, the hypothetical to the VE contained more detailed limitations, Tr. at 571-76, and the ALJ explicitly found that the evidence did not support any more limitations than those that were posed to the VE. Tr. at 23-24.

In <u>Milenbaugh v. Barnhart</u>, No. 3:05-cv-83-J-MCR (M.D. Fla. March 28, 2006) (unpublished),[14] the ALJ found that the claimant suffered from anxiety and an affective disorder that resulted in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation of extended duration. <u>Milenbaugh</u>, No. 3:05-cv-83-J-

---

[13] As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in <u>Williams</u>.

[14] As the only impairments that are relevant for purposes of discussion here are mental impairments, the undersigned does not discuss the physical impairments that were present in <u>Milenbaugh</u>.

MCR at 6, 9-10. The ALJ's hypothetical to the VE stated only that the claimant needed to avoid unusual stress. The court stated that it was "not clear as to how the ALJ determined [the claimant]'s mental impairments required her to simply avoid unusual stress." Id. at 14. The court observed that the ALJ discounted the claimant's credibility with regard to her ability to concentrate but failed to consider contrary evidence from a physician that the ALJ had found credible and whose findings had been adopted. Id. at 12-13. Explaining that the ALJ was required to consider such evidence, the court remanded the case with instructions to reassess the claimant's RFC, adding that "SSR 96-8p required the ALJ to consider the limitations summarized on the [psychiatric review technique form] and to conduct a more detailed assessment of Plaintiff's mental impairments in determining the mental RFC." Id. at 14. Here, the ALJ did not ignore evidence contrary to his findings but rather explained why he was discrediting Plaintiff's testimony, as well as why he "did not attach any special weight" to the opinions of Ms. Howard and Ms. Brock. Tr. at 19-21. In addition, the hypothetical here was more detailed, Tr. at 571-76, and the ALJ explicitly found that the evidence did not support any more limitations that those that were posed to the VE. Tr. at 23-24.

In Wiederholt v. Barnhart, 121 F. App'x 833 (10th Cir. 2005) (unpublished), the ALJ found that the claimant had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in concentration, persistence, or pace. Wiederholt, 121 F. App'x at 839. The hypothetical to the VE included only the limitation of "simple, unskilled tasks mentally." Id. (internal quotation omitted). The United States Court of Appeals for the Tenth Circuit concluded that "[t]he relatively broad,

unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding [the claimant]'s mental impairments." Id. "Because the ALJ omitted, <u>without explanation</u>, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed." Id. (emphasis added). Here, however, the hypothetical was more detailed, Tr. at 571-76, and the ALJ explained why he did not include additional limitations in the hypothetical. Tr. at 23-24.

The ALJ's findings regarding Plaintiff's RFC, as incorporated into the hypothetical to the VE, are supported by substantial evidence. Therefore, the VE's opinion constitutes substantial evidence to support the ALJ's finding that work exists in significant numbers in the national economy that Plaintiff can perform.

## V. Conclusion

The ALJ articulated adequate reasons supported by substantial evidence for discrediting Plaintiff's testimony. The RFC assessment presented in the hypothetical to the VE incorporated the work-related functional limitations resulting from all of Plaintiff's impairments and is supported by substantial evidence. A thorough review of the entire record reveals that the Commissioner's final decision is supported by substantial evidence. In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 26, 2010.

JAMES R. KLINDT
United States Magistrate Judge

jdf
Copies to:
Counsel of Record